UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| *Plaintiff,* | § § | |
| v. | § § § | |
| ARAS INVESTMENT BUSINESS GROUP S.A.P.I. DE C.V.; ARMANDO GUTIERREZ ROSAS, MARIA DE LOURDES TOLENTINO ROQUE; DIAYANIRA RENDON TREJO; EFREN NORBERTO QUIROZ GARDEA; AND LUIS RICARDO QUIROZ GARDEA, | § § § § § § § § § § § | 3:23-CV-00353-KC |
| *Defendants.* | § | |

## REPORT AND RECOMMENDATION

The SEC brings this securities enforcement action against Defendants Aras Investment Business Group S.A.P.I. de C.V. ("Aras"), Armando Gutierrez Rosas (Aras's founder and Chief Executive Officer), and others, alleging that they ran a Ponzi scheme that defrauded at least 450 U.S.-based investors. According to the SEC, Defendants promised investors up to 10% monthly returns from investments in Mexican real-estate and mining ventures. Instead, Defendants spent investor funds for personal salaries, luxury expenses, and Ponzi-style payouts to earlier investors. Facing criminal charges in Mexico, Gutierrez Rosas went into hiding. Mexican authorities are now offering a reward of five million pesos for information leading to Gutierrez Rosas's arrest.

After obtaining consent judgments against all other defendants, *see* ECF Nos. 7–10, the SEC attempted, unsuccessfully, to serve Aras and Gutierrez Rosas with the summons and complaint, *see* ECF Nos. 19, 21, 23.  The SEC later secured entries of default against Aras and Gutierrez Rosas under Article 15 of the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters,[1] with due process satisfied by widespread media coverage in the United States and Mexico reasonably implying notice. *See* ECF No. 29.  To date, neither Aras nor Gutierrez Rosas has appeared or responded to the SEC's allegations.

Before the Court is the SEC's "Motion for Default Judgment as to Liability Against Defendants Aras Investment Business Group S.A.P.I. de C.V. and Armando Gutierrez Rosas" (ECF No. 31) ("Motion"), in which it seeks default judgment under Federal Rule of Civil Procedure 55 against Aras and Gutierrez Rosas as to liability only, with remedies to be addressed later.  The Honorable District Judge Kathleen Cardone (the "referring court") referred the Motion to the undersigned Magistrate Judge under 28 U.S.C. § 636(b).  For the reasons below, the Court **RECOMMENDS** the referring court to **GRANT** the Motion.

---

[1] The Hague Service Convention provides a framework for serving legal documents on defendants in member countries. *See* Fed. R. Civ. P. 4(f)(1); *Volkswagenwerk AG v. Schlunk*, 486 U.S. 694, 698 (1988).  Typically, the plaintiff sends the documents to the central authority of the defendant's country, which then serves the defendant and returns a certificate of service. *Schlunk*, 486 U.S. at 698–99.  Under Article 15 of the Hague Convention, courts may enter default judgment even without this certificate if (1) the documents were sent using a method authorized by the Convention; (2) at least six months have passed since transmission; and (3) despite reasonable efforts, no certificate has been received. *See* Hague Convention, art. 15, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163; *Lindsayca USA, Inc. v. Petroleos de Venezuela, S.A.*, No. 21-cv-37, 2022 WL 3588041, at *3 (S.D. Tex. Aug. 22, 2022), *R&R adopted*, 2022 WL 4588588 (Sept. 29, 2022).

## STANDARD

Rule 55 authorizes courts to enter default judgment against defendants who fail to plead or otherwise defend a case. *See* Fed. R. Civ. P. 55. But the plaintiff has no right to default judgment simply because the defendant is in default. *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996) (citation omitted). Default judgments are a drastic remedy, disfavored by the Federal Rules of Civil Procedure and granted only under exceptional circumstances. *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) (citation omitted).

Courts apply a three-part test to determine whether to enter default judgment. *See Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). The first step asks whether default judgment is procedurally warranted. To make that determination, courts weigh six factors: (1) whether material issues of fact exist; (2) whether the plaintiff has suffered substantial prejudice; (3) whether the grounds for default are clearly established; (4) whether the default was caused by a good-faith mistake or excusable neglect; (5) the harshness of imposing a default judgment; and (6) whether the court would feel compelled to set aside the judgment if the defendant later moved to do so. *Id.*

The second step asks whether the plaintiff's allegations, and any supporting evidence, sufficiently support the requested judgment. *See Nishimatsu Const. Co. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). Because the defendant is in default, courts treat the plaintiff's well-pleaded allegations as admitted and take them as true. *Id.* To determine whether the allegations are well-pleaded, courts draw

"meaning from the case law on Rule 8," which requires "a pleading to contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015) (quoting Fed. R. Civ. P. 8(a)(2)).

The final step asks the form and amount of relief, if any, that the plaintiff should receive. *Id.* The defendant's default leads courts to accept the plaintiff's well-pleaded allegations as true, but only for liability, not for damages. *See U.S. For Use of M-CO Const., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987). Courts will not award damages without a hearing or detailed affidavits that establish the necessary facts. *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). Here, however, this final third step is not at issue because the SEC seeks default judgment solely on liability. *See* Mot. at 8.

## DISCUSSION

Because the SEC seeks default judgment against Aras and Gutierrez Rosas solely on liability, the Court only addresses whether default judgment is procedurally warranted in this case (the first step) and whether the SEC's well-pleaded allegations sufficiently support liability for the requested judgment (the second step).

**I.   Step One: Default judgment is procedurally warranted in this case.**

After weighing the six factors, the Court concludes that default judgment against Aras and Gutierrez Rosas is procedurally warranted.

First, no material facts are in dispute because, by their default, Aras and Gutierrez Rosas have admitted the SEC's well-pleaded allegations. *See Lindsey*, 161

F.3d at 893; *Nishimatsu*, 515 F.2d at 1206.  Second, their failure to respond or otherwise defend the case, largely because of Gutierrez Rosas's continued evasion of the Mexican authorities, has effectively stalled this two-year-old case, causing substantial prejudice to the SEC.  *See Walker v. Koelzer*, 715 F. Supp. 3d 956, 962 (N.D. Tex. 2024).

Third, the grounds for default are clearly established: Aras and Gutierrez Rosas have not responded to the summons, complaint, the Clerk's entry of default, or this Motion despite attempted service by the Mexican Central Authority under the Hague Service Convention[2] and widespread media coverage about this case in the United States and Mexico.  *See Lindsey*, 161 F.3d at 893; *see also* ECF Nos. 28-3–28-12, 28-15–28-18 (news articles reporting on this case and its allegations).  Fourth, no evidence suggests that Aras and Gutierrez Rosas's absence is due to either a good-faith mistake or excusable neglect.  *See Lindsey*, 161 F.3d at 893.  If anything, the opposite is true: Gutierrez Rosas remains at large, deliberately evading the Mexican authorities, and is likely within the Western District of Texas.  *See* ECF Nos. 28-3–28-4, 28-7–28-8, 28-12 (news articles reporting that Mexican authorities are offering a five-million-peso reward for information leading to Gutierrez Rosas's arrest, and that he is reportedly hiding in El Paso).

---

[2] At the time the Clerk of the Court entered default against Aras and Gutierrez Rosas under Article 15 of the Hague Service Convention, the Mexican Central Authority had yet to provide the SEC with a certificate of service.  *See* ECF No. 28 at 2–3.  But in its Motion, the SEC states that, on March 20, 2025, it received a package from the Judicial Branch of the State of Chihuahua containing certifications detailing unsuccessful attempts to serve both individuals at their last known address in July 2024.  *See* Mot. at 2.

Fifth, default judgment is not unfairly harsh here because Aras and Gutierrez Rosas "have had ample opportunity to respond after receiving notice of this action and have failed to do so." *Griffin v. O'Brien, Wexler & Assocs.*, LLC, 680 F. Supp. 3d 772, 781 (E.D. Tex. 2023). Since the SEC filed its complaint over two years ago, Aras and Gutierrez Rosas have failed to respond or appear despite the widespread media coverage about this case and the SEC's diligent efforts to locate and serve them through traditional means, including under the Hague Service Convention through the Mexican Central Authority. *See* ECF Nos. 13–14, 19, 21, 23, 25, 28. Indeed, the fact that all other co-defendants have already consented to judgment—together with news reports of an attorney "for the accused party" publicly speaking on this case's impact in Mexico and Gutierrez Rosas reportedly hiding in El Paso—strongly suggests that Gutierrez Rosas is evading both the Mexican authorities and the SEC. *See* ECF Nos. 7–10, 28-3–28-4, 28-7–28-8, 28-12.

And sixth, the Court agrees with the SEC that the record contains nothing to suggest that the referring court would need to set aside the entry of default against Aras or Gutierrez Rosas, especially because Gutierrez Rosas's absence is due to his deliberate evasion of the Mexican authorities. *See Lindsey*, 161 F.3d at 893.

II. **Step Two: The SEC's well-pleaded allegations sufficiently support liability for the requested judgment.**

In Claims 1–2, 4, and 7 of its complaint, the SEC alleges that Aras and Gutierrez Rosas violated the Securities Act, 15 U.S.C. § 77a *et seq.*, the Securities Exchange Act, 15 U.S.C. § 78a *et seq.*, and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5. Below, the Court addresses each claim in turn.

- 6 -

A. Claim 1 – Violation of Section 5(a) and (c) of the Securities Act

First, the SEC alleges that Aras and Gutierrez Rosas violated Section 5(a) and (c) of the Securities Act, 15 U.S.C. § 77e(a) and (c), because they offered and sold securities in the form of investment contracts—none of which they ever registered with the SEC—to at least 450 investors around the United States. *See* Compl. ¶¶ 1–2, 5, 7, 23, 27–28, 30–32; *see also* Mot. at 10–11, 16–18.

Section 5(a) and (c) prohibit the offer or sale of securities in interstate commerce unless a registration statement has been filed with the SEC or the transaction qualifies for an exemption from registration. *See* 15 U.S.C. § 77e(a) & (c). The Securities Exchange Act defines securities to include "investment contracts." *Id.* § 78c(a)(10). An investment contract exists when there is (1) an investment of money, (2) in a common enterprise, (3) with an expectation of profits, and (4) those profits are generated solely from the efforts of others. *SEC v. Barton*, 135 F.4th 206, 216 (5th Cir. 2025) (quoting *SEC v. W.J. Howey Co.*, 328 U.S. 293, 301 (1946)).

To establish a prima facie case against Aras and Gutierrez Rosas for violating Section 5(a) and (c), the SEC must show that (1) no registration was in effect as to the securities; (2) Aras and Gutierrez Rosas offered or sold these securities; and (3) interstate transportation or communication and the mails were used in connection with the sale or offer of sale. *SEC v. Kahlon*, 873 F.3d 500, 504 (5th Cir. 2017) (citation omitted). The SEC need not prove scienter, as Section 5 is a strict liability statute. *SEC v. Blackburn*, 156 F. Supp. 3d 778, 796 (E.D. La. 2015) (citing *Swenson v. Engelstad*, 626 F.2d 421, 424 (5th Cir. 1980)). Section 5's prohibition also has a

broad reach, extending to significant "participants" in the sale, including those necessary for a transaction and those who were a "substantial factor" in bringing it about. *Id.* at 797 (citing *SEC v. Murphy*, 626 F.3d 633, 649–52 (9th Cir. 2013)). If the SEC establishes a prima facie case, then the burden shifts to Aras and Gutierrez Rosas to prove that an exception applies. *See Kahlon*, 873 F.3d at 504.

Here, the SEC sufficiently pleads that Aras and Gutierrez Rosas violated Section 5(a) and (c) for the Court to treat its allegations as admitted and true. To begin, the SEC sufficiently alleges that Aras and Gutierrez Rosas offered and sold securities in the form of investment contracts. Investors deposited funds with Aras and Gutierrez Rosas expecting profits of up to 10% of monthly returns, which Aras and Gutierrez Rosas promised to generate through investments in real-estate and mining ventures. Compl. ¶¶ 1–2,7. Investors had no control over these purported investments, entirely relying on the investment "expertise" of Aras and Gutierrez Rosas to generate these promised profits. *Id.* ¶¶ 2,7, 27, 30–31.

What is more, the SEC sufficiently alleges that Aras and Gutierrez Rosas acted as significant "participants" in offering and selling these securities, which were never registered with the SEC, through websites and communications via phone, text messages, and email. *Id.* ¶¶ 2, 5, 7, 25, 27, 30–31. And as Aras and Gutierrez Rosas have not appeared or responded to the SEC's complaint, they fail to show that an exception to the registration requirement applies here.

Thus, the Court concludes that the SEC's relevant allegations sufficiently support liability on the requested default judgment as to Claim 1.

> B. Claims 2 and 4 – Violation of Section 10(b) of the Securities Exchange Act, Rule 10b-5, and Section 17(a) of the Securities Act.

Next, the SEC alleges that Aras and Gutierrez Rosas violated Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), Rule 10b-5, 17 C.F.R. § 240.10b-5, and Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), because when offering and selling the relevant securities, they misrepresented and omitted material information, such as the safety of the purported investments, the sources of the returns, and the use of investor funds. *See* Compl. ¶¶ 2, 5, 7, 14, 20, 23, 25–28, 30–34, 37, 68; *see also* Mot. at 11–15.

Section 10(b) of the Securities Exchange Act prohibits using or employing "any manipulative device or contrivance" against SEC rules and regulations "in connection with" any purchase or sale of securities. *Ernst & Ernst v Hochfelder*, 425 U.S. 185, 213–14 (1976). Congress granted rulemaking authority to the SEC to enforce this provision, under which the SEC adopted Rule 10b-5. *Id.* This rule makes it unlawful, "in connection with" the purchase or sale of securities, to "employ any device, scheme, or artifice to defraud," to "make any untrue statement of a material fact," or to "engage in any act, practice, or course of business" that "operates . . . as a fraud or deceit." 17 C.F.R. § 240.10b-5.

Section 17(a) of the Securities Act outlaws "substantially the same" conduct as Section 10(b) and Rule 10b-5, but covers acts committed "in the offer or sale of any securities." *SEC v. World Tree Fin., L.L.C.,* 43 F.4th 448, 460 (5th Cir. 2022) (citations omitted). Section 17(a) makes it unlawful to (1) "employ any device, scheme, or artifice to defraud"; (2) "obtain money or property by means of any

- 9 -

[material misstatements or omissions]"; or (3) "engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser." *See* 15 U.S.C. § 77q(a)(1)-(3).

To state a claim under Section 10(b) and Rule 10b-5, the SEC must allege (1) a misstatement or omission; (2) of a material fact; (3) in connection with the purchase or sale of a security; and (4) with scienter. *Blackburn*, 156 F. Supp. 3d at 788 (citing *SEC v. Gann*, 565 F.3d 932, 936 (5th Cir. 2009)).[3] Misrepresentations and omissions are material if there is a substantial likelihood that a reasonable investor would consider the information important when deciding to invest. *SEC v. Sethi*, 910 F.3d 198, 206 (5th Cir. 2018). Scienter is a "mental state embracing intent to deceive, manipulate, or defraud," which can also be satisfied by a showing of "severe recklessness"—that is, "an extreme departure from the standards of ordinary care." *World Tree Fin.*, 43 F.4th at 459. When analyzing a complaint for scienter, courts must assess all allegations holistically and not in isolation. *Owens v. Jastrow*, 789 F.3d 529, 536 (5th Cir. 2015). And to satisfy the "in-connection-with element, the fraudulent scheme and sale of securities need only 'coincide.'" *World Tree Fin.*, 43 F.4th at 459.

---

[3] Unlike private litigants bringing actions under the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4, for violations of Section 10(b) and Rule 10b-5, the SEC need not prove the additional elements of reliance or loss causation. *E.g.*, *SEC v. Pirate Inv. LLC*, 580 F.3d 233, 239 n.10 (4th Cir. 2009); *SEC v. Wolfson*, 539 F.3d 1249, 1256 (10th Cir. 2008); *Graham v. SEC*, 222 F.3d 994, 1001 (D.C. Cir. 2000); *SEC v. Rana Rsch., Inc.*, 8 F.3d 1358, 1364 (9th Cir. 1993); *Schellenbach v. SEC*, 989 F.2d 907, 913 (7th Cir. 1993); *SEC v. Blavin*, 760 F.2d 706, 711 (6th Cir. 1985).

As Section 17(a) outlaws substantially the same conduct as Section 10(b) and Rule 10b-5, allegations sufficient to support violations of Section 10(b) and Rule 10b-5 are also sufficient to support violations of Section 17(a). *See Blackburn*, 156 F. Supp. 3d at 788 (citing *SEC v. Monarch Funding Corp.*, 192 F.3d 295, 308 (2d Cir. 1999)); *see also SEC v. Verges*, 716 F. Supp. 3d 456, 467 (N.D. Tex. 2024) ("Claims arising under § 10(b) and § 17(a) 'are often analyzed as one' because of their similarities." (citations omitted)). The only difference is that while Section 17(a)(1) requires scienter, Section 17(a)(2) and (a)(3) require only negligence. *World Tree Fin.*, 43 F.4th at 460.

Here, the SEC sufficiently pleads that Aras and Gutierrez Rosas violated Section 10(b), Rule 10b-5, and Section 17(a) for the Court to treat its allegations as admitted and true.[4]

---

[4] The Court recognizes that claims under Section 10(b), Rule 10b-5, and Section 17(a) allege securities fraud and that Federal Rule of Civil Procedure 9(b) requires fraud claims to be alleged with particularity. *See Verges*, 716 F. Supp. 3d at 465; *SEC v. SolarWinds Corp.*, 741 F. Supp. 3d 37, 76 (S.D.N.Y. 2024). Some courts have held that Rule 9(b)'s particularity requirement applies in the default judgment context. *See, e.g.*, *United States v. Hernandez*, --- F. Supp. 3d ---, No. SA-24-CV-00778-XR, 2025 WL 2222742, at *4 (W.D. Tex. Aug. 1, 2025) (False Claims Act claims); *Walker*, 715 F. Supp. 3d at 966 (state law fraud claims); *see also Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 108 F. App'x 497, 498 (9th Cir. 2004) (assuming without deciding that Rule 9(b)'s particularity requirement applies to RICO and state law fraud claims in the default judgment context); *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392–93 (9th Cir. 1988) (finding district court erred in awarding default judgment on RICO claims, reasoning that Rule 9(b)'s particularity requirement "should be enforced" because it protects defendants from reputational harm tied to allegations of fraud or dishonesty, as well as from the risk of enhanced damages).

But the Fifth Circuit has not addressed whether Rule 9(b)'s particularity requirement applies in the default judgment context. Assuming without deciding whether Rule 9(b)'s particularity requirement applies here, the Court observes that the SEC's detailed allegations discussed below satisfy Rule 9(b)'s heightened pleading standard. *See U.S. ex rel. Williams v. Bell Helicopter Textron Inc.*, 417 F.3d 450, 453 (5th Cir. 2005) (to satisfy Rule

According to the SEC, from about March 2020 through November 2021, Gutierrez Rosas, through Aras, ran a multi-million-dollar Ponzi scheme that raised about $15 million from at least 450 U.S.-based investors, most of whom were native Spanish speakers. Compl. ¶ 1, 14. Gutierrez Rosas, through Aras, marketed Aras as a company that used investor funds to generate profits from flipping distressed Mexican real estate and selling minerals, primarily gold and silver, extracted from mining operations. *Id.* ¶¶ 14, 27.

Starting around March 2020, Gutierrez Rosas, through Aras, offered and sold investment contracts to investors without registering them with the SEC, qualifying for an exemption, or verifying whether investors were accredited. *Id.* ¶¶ 21, 23–24. In connection with these offerings and sales, Gutierrez Rosas, through Aras, provided investors with offering documents claiming that Aras invested pooled capital into diversified real estate and mining portfolios, promising monthly returns of up to 10% based on the size of the investor's initial investment. *Id.* ¶ 26. Gutierrez Rosas and Aras employees, acting with his knowledge and under his direction, prepared these offering documents and reinforced their content through oral communications with investors. *Id.* ¶¶ 2, 26.

Gutierrez Rosas, through Aras, also promoted these investment contracts on websites in Spanish and English. These sites described Aras as a company that strategically allocated capital into real estate and mining ventures, including flipping bank-auctioned real estate and selling minerals to producers. *Id.* ¶ 27. These sites

---

9(b)'s particularity requirement, the complaint must allege the "who, what, when, where, and how" of the fraud).

also described the investment contracts as "safe, reliable, and highly profitable" and promoted them as "reliable and low-risk financial instruments." *Id.* Aras represented to investors that the interest rate was guaranteed for the life of the contract, their capital was secure, and they could renew the investments after receiving both their initial capital and accrued interest. *Id.* Gutierrez Rosas, through Aras, also ran these promotions via social media (including Facebook) and text messages, encouraging investors to invest by specific deadlines to receive higher returns. *Id.* ¶ 28.

To fuel the scheme further, Gutierrez Rosas, through Aras, recruited investors to become "consultants" tasked with bringing in new investors in exchange for commissions and to avoid termination of their contracts. Scripts prepared by Aras, under Gutierrez Rosas's direction, instructed these consultants to repeat the same claims made in the offering documents and websites. *Id.*

Once investors agreed to invest, they were provided with wire instructions or deposit slips for U.S.-based bank accounts controlled by Aras and its employees acting under Gutierrez Rosas's direction. *Id.* ¶ 29. Aras and its employees also generated contracts (sometimes in English, sometimes in Spanish) that claimed the investor was purchasing shares in Aras and entitled to receive profits either as monthly dividends or a single payment at the contract's end, generated from the company's purported real estate and mining investments. *Id.* ¶ 30.

These representations were material because they created the illusion that Aras was a legitimate, well-managed company, which led investors to believe that

Aras was using their funds responsibly to generate safe and steady profits. *Id.* ¶¶ 1, 31.[5] But in truth, Gutierrez Rosas, through Aras, was not using investor funds for mining, real estate, or any such investments. *Id.* ¶ 32. Instead, Gutierrez Rosas directed Aras's employees to make Ponzi-like payments to earlier investors, fund personal expenses, and enrich Gutierrez Rosas and others involved in the scheme. *Id.* ¶¶ 32–33.[6]

For example, Gutierrez Rosas directed Aras employees to use investor funds to purchase a $2.5 million mansion in Texas for his personal use, wire $300,000 to a foreign bank account, buy a $50,000 Harry Winston engagement ring, and make luxury purchases totaling over $34,000 from brands such as Hermes, Louis Vitton, Tom Ford, and others. *Id.* ¶ 34. Other expenses include more than $150,000 in commissions, over $60,000 in electronics and equipment for Gutierrez Rosas and Aras, various purchases on Amazon, eBay, and other platforms, and employee salaries and personal expenses. *Id.* ¶¶ 34–35.

Gutierrez Rosas directed how Aras employees spent investor funds, maintaining oversight by requiring access to the bank accounts used to collect and

---

[5] *See, e.g.*, *SEC v. Rsch. Automation Corp.*, 585 F.2d 31, 35 (2d Cir. 1978) (omissions were material because "[w]hat reasonable investor would not wish to know that the money raised by stock sales would not be used for working capital but be diverted to [the defendant's] officers?").

[6] *See, e.g.*, *SEC v. Wilson*, No. 4:22-CV-00741-O, 2022 WL 18275941, at *6 (N.D. Tex. Dec. 28, 2022), *R&R adopted*, No. 4:22-CV-00741-O, 2023 WL 172042 (N.D. Tex. Jan. 12, 2023)(misappropriation of investor funds and concealment of the misuse of funds from investors violates Section 10(b) and Section 17); *SEC v. Carter*, No. 4:19-CV-100-SDJ, 2020 WL 6304889, at *5 (E.D. Tex. Oct. 28, 2020) (failure to inform investors that their funds were used to pay personal tax debts and personal hunting ranch constituted material misrepresentations violating Section 10(b) and Section 17).

disburse those funds. *Id.* ¶¶ 35–37. This access gave Gutierrez Rosas full visibility into how Aras employees spent investor funds, which contradicted the representations that he, through Aras, made to investors. *Id.* Gutierrez Rosas's control over operation and knowledge of fund flows show that he knew, or was at least severely reckless in not knowing, about the misuse of investor funds. What is more, his decision to go into hiding in the fall of 2021, after Aras stopped making payments to investors and Mexican authorities began pursuing him, further supports the SEC's claim that he acted with scienter. *Id.* ¶¶ 14–15, 37.[7]

Thus, the Court concludes that the SEC's relevant allegations sufficiently support liability on the requested default judgment as to Claims 2 and 4.

C. Claim 7 – Liability Under Section 20(a) of the Securities Exchange Act

Lastly, the SEC alleges that Gutierrez Rosas is jointly and severally liable under Section 20(a) of the Securities Exchange Act, 15 U.S.C. § 78t(a), for Aras's securities violations discussed above, as he was its founder and CEO, controlling it when Aras committed these securities violations. *See* Compl. ¶¶ 2, 7, 14, 20, 26, 30.

Under Section 20, a person who exerts control over another individual who violates any provision of the Securities Exchange Act can be held jointly and severally liable for the underlying securities violation. *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 206 n.4 (5th Cir. 2009).

---

[7] *See Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) ("Alleged facts are sufficient to support such an inference if they either (1) show a defendant's motive to commit securities fraud or (2) identify circumstances that indicate conscious behavior on the part of the defendant.").

To make a prima facie showing that Gutierrez Rosas controlled Aras, the SEC must allege facts showing that he (1) had actual power or influence over Aras; and (2) induced or participated in the securities violation. *See Dennis v. Gen. Imaging, Inc.*, 918 F.2d 496, 509 (5th Cir. 1990). While the SEC need not allege that Gutierrez Rosas actually participated in the underlying securities violations, it must allege some facts beyond his position or title. *See id.*; *G.A. Thompson & Co. v. Partridge*, 636 F.2d 945, 958 (5th Cir. 1981). Gutierrez Rosas can assert lack of participation in the securities violations and good faith as affirmative defenses. *Partridge*, 636 F.2d at 958.

Here, as discussed above, the SEC sufficiently alleges that Aras violated Section 10(b) of the Securities Exchange Act and Rule 10b-5. The SEC also sufficiently alleges that Gutierrez Rosas controlled Aras and held ultimate authority over it when Aras committed these securities violations, and that he never acted in good faith while doing so, for the Court to treat its allegations as admitted and true. *See* Compl. ¶¶ 2, 7, 14, 20, 26, 30, 68. Indeed, all the alleged misrepresentations and omissions of material fact made in connection with the offer and sale of the investment contracts were made by Gutierrez Rosas, through Aras and its employees under his direction. *See Janus Capital Group, Inc., et al., v. First Derivative Traders*, 564 U.S. 135, 142 (2011) ("the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it").

Thus, the Court concludes that the SEC's relevant allegations sufficiently support liability on the requested default judgment as to Claim 7.

## RECOMMENDATION

For these reasons, the undersigned Magistrate Judge **RECOMMENDS** that the Honorable District Judge Kathleen Cardone **GRANT** the SEC's "Motion for Default Judgment as to Liability Against Defendants Aras Investment Business Group S.A.P.I. de C.V. and Armando Gutierrez Rosas" (ECF No. 31).

**So ORDERED and SIGNED this 17th day of October 2025.**

*/s/ Anne T. Berton*
**ANNE T. BERTON**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THE FOREGOING REPORT, WITHIN FOURTEEN DAYS OF SERVICE OF SAME, MAY BAR DE NOVO DETERMINATION BY THE DISTRICT JUDGE OF AN ISSUE COVERED HEREIN AND SHALL BAR APPELLATE REVIEW, EXCEPT UPON GROUNDS OF PLAIN ERROR, OF ANY UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS AS MAY BE ACCEPTED OR ADOPTED BY THE DISTRICT COURT.**